# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00726-CR

**Tracy Morgan Dantzler, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
### NO. 30329, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Tracy Morgan Dantzler of possessing and manufacturing methamphetamine in an amount of 400 grams or more, and assessed his punishment at confinement for 20 years and a probated fine. *See* Tex. Health & Safety Code Ann. §§ 481.112, .115 (West 2003). In eight issues, appellant challenges the legal and factual sufficiency of the evidence supporting his conviction, and further contends that (i) the trial court erred in denying appellant's challenge for cause as to an objectionable juror, (ii) the State improperly injected evidence outside the record, and (iii) the statute under which appellant was convicted is impermissibly overbroad and vague as to deprive him of due process and equal protection under both the Texas and United States constitutions. We affirm the judgment of conviction.

**FACTUAL BACKGROUND**

Law enforcement officers of the Burnet County Sheriff's Office responded to a report on February 19, 2004, that a runaway juvenile could be found at appellant's residence located at the end of a county road in Burnet County. At trial, the officers testified that they arrived at the property after dark. An unlocked gate contained warning signs of "no trespassing," "private property," and "keep out." Deputy Dean Golman of the Burnet County Sheriff's Office described the entrance to the property as having a long drive before the gate, followed by a heavily wooded area after the gate leading to a circular drive. On the property, the officers observed a mobile home, an Airstream travel trailer, a locked storage facility, and a motor home located further down a trail. Sergeant Brent Nichols testified that the perimeter of the property was fenced. A neighbor testified that appellant lived on a fenced property at the last gate at the end of a county road in Burnet County. Although she had seen other cars going past her house toward appellant's residence, to her knowledge no one else lived on the property.

The State's evidence at trial showed that when Golman, Chief Deputy Rick Allen, and another deputy arrived at the property they saw a male youth entering the Airstream trailer. One of the officers knocked on the door of the trailer but no one answered. Allen sent one of the officers to the mobile home to ask for their help in locating the runaway juvenile. Appellant and a woman with a young child were in the mobile home. The woman gave permission for the officers to enter the trailer to look for the runaway. While inside the mobile home, the officers detected the odor of cooked methamphetamine and observed appellant lying on the couch and unable to stand.

One of the officers entered the Airstream trailer and found two juveniles: appellant's son and the runaway juvenile. As the officers located the juvenile, they observed a video surveillance camera in front of the motor home, an illuminated screen inside the home that was displaying the image from the mounted camera, and a light on inside the motor home. They observed an extension cord running from the mobile home through the woods to the motor home, and another that led out to the surveillance camera. The cords were visible on the ground. Golman testified that the camera was set up to capture images over the tree tops. The motor home was located some distance down a trail and neither the motor home nor the surveillance camera were visible from the vicinity of the mobile home. The officers detected a strong odor of methamphetamine emanating from the motor home.

The officers removed the juvenile from the trailer and returned to the mobile home. Based upon their observations, the officers secured the premises and obtained a search warrant for the motor home. According to the testimony at trial, members of the narcotics enforcement team arrived after midnight to execute the search warrant. The narcotics officers discovered the "components of a fully operational clandestine methamphetamine laboratory" inside the motor home. They videotaped and photographed the interior of the trailer and seized numerous items.

At trial, Deputies Allen and Golman testified about their initial investigation. Three members of the narcotics enforcement team also testified about the execution of the search warrant and the evidence videotaped, photographed, and seized. A chemist from the Department of Public Safety testified that the officers seized methamphetamine weighing 535.97 grams. After a four-day trial, the jury convicted appellant of possession and manufacture of methamphetamine.

**ANALYSIS**

*Legal and Factual Sufficiency*

In his first four issues, appellant challenges the legal and factual sufficiency of the evidence to sustain his conviction for possession and manufacture of methamphetamine. Specifically, appellant contends that his nearby presence in the mobile home and the court's failure to include a charge on parties are insufficient to affirmatively link him to the manufacture of, or the custody or control of, the methamphetamine.

In a legal sufficiency review, we look at the relevant evidence in the light most favorable to the verdict and determine whether a rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). The evidence, viewed in this light, and all reasonable inferences drawn therefrom, are evaluated in this review. *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995). The trier of fact is entitled to resolve any conflicts in the evidence, to evaluate the credibility of witnesses, and to determine the weight to be given any particular evidence. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). Any inconsistencies in the evidence should be resolved in favor of the verdict. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). This standard of review is the same for both direct and circumstantial evidence. *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992).

Factual sufficiency requires the reviewing court to view the evidence "without the prism of 'in the light most favorable to the prosecution.'" *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). There are two prongs to a factual sufficiency review: the reviewing court must ask (i) whether the State's evidence, taken alone, is so weak that it renders the adverse finding

4

clearly wrong or manifestly unjust; and (ii) whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence. *Zuniga v. State*, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004); *Zuliani v. State*, 97 S.W.3d 589, 593-94 (Tex. Crim. App. 2003); *Johnson*, 23 S.W.3d at 11. A factual sufficiency review must employ appropriate deference to the fact finder's role as the sole judge of the weight and credibility to be given to witness testimony. *Johnson*, 23 S.W.3d at 7. A verdict will be set aside "only if the evidence supporting guilt is so obviously weak, or the contrary evidence so overwhelmingly outweighs the supporting evidence, as to render the conviction clearly wrong and manifestly unjust." *Ortiz v. State*, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002).

To obtain a conviction based on the indictment in this case, the State was required to prove that appellant knowingly manufactured methamphetamine in an amount of more than 400 grams, including adulterants and dilutants. *See* Tex. Heath & Safety Code Ann. §§ 481.112, .115. As to possession, the State had to prove that appellant exercised care, control, and management over the contraband and that he knew the substance was contraband. *Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988). Possession need not be exclusive, but when more than one person exercises control over the contraband, some affirmative link must exist between the accused and the contraband. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985).

Both manufacture and possession can be established through circumstantial evidence. *Id*. Although mere presence is insufficient to support a conviction, it is a circumstance tending to prove guilt that, when combined with other facts, shows that the accused was a participant in the manufacturing. The State may demonstrate that affirmative links exist between the accused and the contraband through circumstantial evidence such as the amount found, its location in relationship

5

to appellant's personal belongings, appellant's relationship to the premises, appellant's conduct with respect to the contraband, and the proximity of appellant to the contraband. *See Earvin v. State*, 632 S.W.2d 920, 924 (Tex. Crim. App. 1982); *Pollan v. State*, 612 S.W.2d 594, 596 (Tex. Crim. App. 1981); *Brown v. State*, 757 S.W.2d 828, 829 (Tex. App.—Waco 1988, pet. ref'd) (appellant's motor home proximity to methamphetamine laboratory, provision of electricity to laboratory, possession of base chemicals for methamphetamine manufacture and presence of strong odor of methamphetamine supported conviction for methamphetamine manufacturing).

Members of the narcotic enforcement team videotaped and photographed the interior and exterior of the motor home; these exhibits were admitted into evidence. Sergeant David Laine, who executed the search warrant along with other members of the narcotics enforcement team, testified that the officers found the "components of a fully operational clandestine methamphetamine laboratory" inside the motor home. The officers seized various items of equipment and numerous containers of liquids. They also observed common items found at the scene that were consistent with use in the manufacture of methamphetamine. Laine described the corrosiveness and toxicity of the chemicals and their effect on items in the motor home. He identified acids and iodine as precursor chemicals used in the manufacture of methamphetamine. The officers also seized numerous glassware items consistent with the manufacturing process. Laine explained how coffee pots are regularly used in the process and how the pots melt, deteriorate, and become discolored from the chemicals. Laine testified that the officers took approximately two and a half hours to process the motor home. Sergeant Nichols, the officer who had walked the perimeter of the property, testified that he observed a couple of burn piles between the mobile home and the motor home that contained acetone cans, a substance used in the manufacture of methamphetamine.

6

In this case, there was ample evidence to show that appellant was a participant in both the possession and manufacturing of methamphetamine. Although appellant disputes that the State showed that the premises were linked to him, the evidence showed that appellant resided on the property where the "fully operational clandestine methamphetamine laboratory" was located and that he exercised control over the property. The property was secluded, surrounded on all sides by a fence, and gated with warnings to exclude others. The mobile home, evidently appellant's primary residence, provided power through an extension cord linked with the motor home where the laboratory was found. Although the motor home was located some distance from the mobile home, it was located on the same property and linked by the power line. A surveillance camera held in place by guide wires allowed anyone in the motor home to see across the wooded areas and detect anyone entering the property. The motor home was inoperable and in deteriorating condition, appearing to have been in its location for a long period of time.

Appellant's link with the lab was demonstrated in another manner. On the night in question, when the officers first encountered appellant, they detected that appellant and his residence smelled strongly of a methamphetamine-like chemical odor that is consistent with the cooking or manufacturing of methamphetamine. Deputies Allen and Golman both testified that appellant's physical condition was consistent with use of the drug, and that he appeared to have "crashed" due to the exhaustion and fatigue resulting from extended use. Allen testified that appellant "was hurting." In response to questioning on cross-examination that appellant might have the flu, Allen said that appellant said he was ill and might have said he had the flu.

Although an individual's mere presence at the scene of a drug laboratory is insufficient to support a conviction for drug manufacturing or possession, it is a circumstance

7

tending to prove guilt that, when combined with other facts, shows that the accused was a participant in the manufacturing or had custody and control sufficient for possession. In this case, the fact that the drug laboratory was on appellant's premises, that he resided in the nearby mobile home, that the laboratory was linked to appellant's residence by the power line, that chemical receptacles and burn piles were located on the property, and that both appellant and the residence smelled of the distinctive methamphetamine odor are sufficient to establish his guilt. There was other evidence from which a reasonable juror could have determined that appellant was in possession and control of the premises, that he resided there, and that he was involved in the manufacture of the methamphetamine found at that location.

Although no direct evidence shows appellant was present when the manufacturing occurred or that he knew there was methamphetamine in the motor home, viewing this evidence under the appropriate standards, we conclude that the jury could rationally infer and find beyond a reasonable doubt that appellant possessed and manufactured methamphetamine. Likewise, the conviction is not so against the great weight of the evidence as to be manifestly wrong and unjust. The evidence is both legally and factually sufficient to support the conviction.

Appellant complains that the trial court failed to give a charge on the law of parties. Texas law provides that a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. Tex. Pen. Code Ann. § 7.01(a) (West 2003). Moreover, a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2) (West 2003). For a person to be guilty under the law of

8

parties, the State must first prove the guilt of another as the primary actor. *Richardson v. State*, 879 S.W.2d 874, 882 (Tex. Crim. App. 1993). The court's charge did not include an instruction on the law of parties. Because the State did not rely on the law of parties, it assumed the burden of showing that appellant was the principle actor. As discussed above, there was legally sufficient evidence for the jury to find that appellant knowingly or intentionally possessed and manufactured methamphetamine. Because there was evidence from which a jury could reasonably conclude that appellant was guilty as a principle, it was not necessary for the State to rely on the law of parties to convict him.

We overrule appellant's first four issues.

### Challenge for Cause

In his fifth issue on appeal, appellant argues that the trial court erred when it refused to grant his challenge for cause "requiring him to accept an objectionable juror." Specifically, appellant contends that he was forced to use a peremptory challenge when the trial court denied his challenges for cause and his request for three additional peremptory challenges. The State responds that the trial court did not abuse its discretion because, although the two venire members initially expressed reservations about the presumption of innocence, these jurors were not shown to be biased against the law on the presumption, and the trial court did not abuse its discretion in overruling the challenges for cause.

A defendant may properly challenge any prospective juror who demonstrates a bias or prejudice against any of the law applicable to the case on which the defendant is entitled to rely. *See* Tex. Code Crim. Proc. Ann. art. 35.16(c)(2) (West Supp. 2005). We review a trial court's

decision to deny a party's challenge for cause for an abuse of discretion. *Swearingen v. State*, 101 S.W.3d 89, 98 (Tex. Crim. App. 2003); *Curry v. State*, 910 S.W.2d 490, 492 (Tex. Crim. App. 1995). We review a trial court's decision in light of the venire member's *voir dire* testimony as a whole. *Swearingen*, 101 S.W.3d at 99; *see Patrick v. State*, 906 S.W.2d 481, 488 (Tex. Crim. App. 1995). When the record does not contain a clearly objectionable declaration by the venire member, or the record demonstrates a vacillating or equivocal venire member, we accord great deference to the trial judge who had the better opportunity to see and hear the person. *Swearingen*, 101 S.W.3d at 99; *Garcia v. State*, 887 S.W.2d 846, 854 (Tex. Crim. App. 1994).

To preserve error on denied challenges for cause, the appellant must demonstrate on the record that (i) he asserted a clear and specific challenge for cause; (ii) he used a peremptory challenge on the complained-of venire member; (iii) all of his peremptory challenges were exhausted; (iv) his request for additional strikes was denied; and (v) an objectionable juror sat on the jury. *Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002). The record in this case reflects that appellant exhausted all of his peremptory challenges, and then requested, but was denied, further challenges. After appellant's requests for additional peremptory strikes were denied, he accepted a juror he deemed objectionable, thereby preserving error for review on appeal. *See id*.

To determine if a prospective juror should be excused for cause due to a bias or prejudice against a phase of the law upon which the defendant is entitled to rely, "[t]he test is whether the bias or prejudice would substantially impair the prospective juror's ability to carry out his oath and instructions in accordance with the law." *Id.* The law must be explained to the prospective juror and the juror must be asked whether he can follow that law regardless of her

10

personal view before the juror can be excused for cause on this basis. *Id*. The burden is on the proponent of a challenge for cause to establish his challenge is proper. *Id*. at 747.

Appellant's challenge appears to focus on three jurors. As to venire person Harned, appellant fails to include any record references to objectionable responses. As to venire persons Cummings and Schmidt, appellant objected that they demonstrated that they would not apply a presumption of innocence. Our review of the record shows that during *voir dire*, appellant's counsel asked, "Is there anybody who agrees with [venire member Dickens] that the fact that Mr. Dantzler has been indicted and charged–that there's probably something going on? Anybody who agrees with that?" Nineteen venire members raised their hands, including Cummings and Schmidt, numbers 10 and 18. Counsel continued, "Of all those who just had their cards up, the next question is that mind set, would that maybe affect you in applying the presumption of innocence to Mr. Dantzler or in applying the law that the state is required to prove each and every element of the offense charged beyond a reasonable doubt?" Sixteen persons raised their hands, including Cummings and Schmidt. In response to more specific questions, at least two jurors expressly agreed that they could follow the charge in the case. Cummings and several other jurors then agreed with that proposition.

When a venire member expressed confusion as to whether a follow-up question was a different one than defense counsel had previously asked, counsel repeated the nature of his concern regarding the presumption of innocence. The court then intervened:

> Counsel, I'm going to rephrase your last inquiry just a little bit. The inquiry is this: If the court instructs you that you must presume the defendant innocent, and that the state has the burden to prove each and every element beyond a reasonable doubt, if you're charged with that, among other legal matters by the Court, if you get back there and you have this feeling that [counsel] has been talking about that, quote, something must have been going on, unquote, can you nevertheless set that feeling

11

aside and follow the law?  Now is there anybody who, even though they might have that feeling, cannot follow the law as given to it by the Court?

Three venire members raised their hands.  Counsel continued questioning the venire members who had originally raised their hands as well as others.  When counsel included Schmidt among those who had raised their hands, she said, "No, I didn't have my card up."

The court allowed defense counsel to inquire and explain the concept of presumption of innocence.  The court then clarified the questioning in response to juror confusion.  Later, when the court excused jurors for cause, the court excused three venire members who had expressed concerns about applying the presumption of innocence.  There was no basis for the challenges to the other venire members now sought by appellant.  Specifically, the two venire members appellant now challenges were not among those who continued to express a concern about the presumption; rather, they did not raise their hands following the clarification by the court and continued inquiry by defense counsel.  After the two jurors indicated by their silence that they could follow the law, the trial court properly exercised its discretion in denying the challenges for cause.  We overrule appellant's fifth issue on appeal.

***Improper Final Argument***

In his sixth issue, appellant argues that evidence not in the record was improperly injected into the State's final argument.  The complained-of statement occurred as the prosecutor characterized the testimony of Sergeant Nichols.  Arguing that appellant was sufficiently alert at various times to respond to the officers, the State argued,

12

Sergeant Nichols explained that he talked to him to find out if there were other hazardous, or booby traps, or anything that should be made known to him about safety matters down at that motor home.  Do you recall that, Ladies and Gentlemen?  He also testified that he got some input.  Remember.  The instruction was clear.  Don't tell us what he might have said.  Did you get some information?  The testimony was yes.

Defense counsel then objected and requested a mistrial, stating that there was no testimony concerning whether Nichols got some information, but only that appellant "raised an eye."  The court then instructed the jury that this was argument of counsel and that their recollection of the evidence controlled.  During its deliberations, the jury sent a note to the court advising that they disagreed "as to the testimony of Officer Nichols" and "as to whether there was any response."  Because the jury inquired about this testimony, appellant urges that this demonstrated harm.

The testimony at issue occurred during the direct examination of Sergeant Nichols as he described the evidence that led the officers to request a search warrant and to secure the premises in preparation for a possible search.  Nichols described the physical characteristics of methamphetamine users and then described appellant's characteristics that manifested those characteristics: "He was thin in nature, his face was drawn, his eyes were recessed due to lack of fluids or lack of sleep one, and he was quite difficult to arouse and answer from while he was laying on the couch."

By agreement of the parties, the relevant testimony was read to the jury:

Q.  Why were you trying to talk to him?

A.  I needed to speak with Mr. Dantzler to see if there was anything that he could tell me that was in the motor home that would possible injury some of my personnel.  That included booby traps or anything of that nature.

13

Q. Safety concern?

A. That's correct.

Q. Did he respond to you?

A. He opened his eyes.

Appellant acknowledges that the agreed upon testimony was read to the jury, but urges that it caused the jury to speculate that there might be other evidence not disclosed to the jury. There was no objection to the testimony that was requested or read and any concern about the nature of appellant's "input" was clarified by the reading of the testimony. We overrule appellant's sixth issue.

### *Constitutionality of Statute*

In issues seven and eight, appellant asserts that the definition of "controlled substance" in section 481.002(5) is unconstitutionally vague in violation of the due process provisions of the United States and Texas constitutions. Tex. Health & Safety Code Ann. § 481.002(5) (West Supp. 2005); *see* U.S. Const. amend. XIV, § 1; Tex. Const. art. I, § 19. He urges that, because the statute defines a controlled substance to include adulterants and dilutants, the enforcement of the statute is arbitrary and denies equal protection generally and as to him in particular. Tex. Health & Safety Code Ann. § 481.002(5). His argument is the same as to both constitutions.

When reviewing the constitutionality of a statute, we presume that the statute is valid and that the legislature has not acted unreasonably or arbitrarily in enacting it. *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978). The burden is on the party challenging the statute to establish that it is unconstitutional. *Id.* The constitutionality of a statute may be challenged for

14

overbreadth or for vagueness. *See*, *e.g.*, *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 494 (1982); *Cain v. State*, 855 S.W.2d 714, 717 (Tex. Crim. App. 1993). Because there are no implications of constitutionally protected conduct here, appellant's overbreadth challenge must fail. *See Flipside*, 455 U.S. at 494. In a vagueness challenge, we should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A defendant who engages in some conduct that is clearly proscribed by the statute cannot complain of its vagueness. *Id*. at 495; *see also Bynum v. State*, 767 S.W.2d 769, 774 (Tex. Crim. App. 1989). Accordingly, when challenging a statute for vagueness, a defendant must show that the statute as it applies to him in his situation is unconstitutional. *See Bynum*, 767 S.W.2d at 774.

When a statute is challenged as unconstitutionally vague, our concern is "premised on notions of notice and due process." *Cain*, 855 S.W.2d at 717. A criminal statute is not vague if it gives a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited and it provides sufficient notice to law enforcement to prevent arbitrary or discriminatory enforcement. *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972); *State v. Edmond*, 933 S.W.2d 120, 125 (Tex. Crim. App. 1996); *Long v. State*, 931 S.W.2d 285, 287 (Tex. Crim. App. 1996). A statutory provision need not be mathematically precise; it need only give fair warning in light of common understanding and practices. *Grayned*, 408 U.S. at 110-11.

In this case, appellant possessed a solution or mixture that contained methamphetamine and that was used in the process of manufacturing methamphetamine. Although the percentage of pure methamphetamine contained in the solution was small, the statute clearly provides that it was illegal to possess a controlled substance and that the aggregate weight of any mixture or solution would be used to determine the amount of controlled substance possessed. We

15

hold that appellant has not established that section 481.002(5) is unconstitutionally vague on its face or as applied to him here.

That the controlled substance may include the aggregate weight of adulterants and dilutants is well established. *See Seals v. State*, No. PD-0678-04, 2005 Tex. Crim. App. LEXIS 1966, at *5 (Tex. Crim. App. Nov. 16, 2005). Section 481.002(5) defines the term "controlled substance" to include "the aggregate weight of any mixture, solution, or other substance containing a controlled substance." Tex. Health & Safety Code Ann. § 481.002(5). An adulterant or dilutant is defined as "any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance." Tex. Health & Safety Code Ann. § 481.002(49). Thus, any substance that is added to or mixed with a controlled substance, "regardless of when, how, or why that substances was added," may be included in the aggregate weight of the controlled substance as an adulterant or dilutant. *Seals*, 2005 Tex. Crim. App. LEXIS 1966, at *8. The gravamen of the offense is the quantity of the usable drug, not its purity. *McGlothin v. State*, 749 S.W.2d 856, 859-61 (Tex. Crim. App. 1988). That the legislature intended to include as an adulterant or dilutant any material that increased the bulk or quantity of the controlled substance is clear. *Id*. Unlike *Seals,* in which the defendant challenged whether blood should be included within the aggregate weight, appellant does not challenge that the substances here included within the aggregate weight do not come within the definition of adulterants and dilutants. *See Seals*, 2005 Tex. Crim. App. LEXIS 1966, at *16 (Womack, J., concurring) ("There is no constitutional question in this case, in my view. But the statutory definition may be so inclusive as to invite constitutional problems.").

Thus, the statute is sufficient to notify law enforcement and to prevent the arbitrary or discriminatory enforcement of the statute. In addition, because the statute clearly includes the aggregate weight of adulterants within the definition of controlled substances and the conduct is clearly proscribed, we find that the statute is not so overbroad or vague as to fail to put a person of ordinary intelligence on notice as to what conduct is prohibited by the statute. We overrule appellant's seventh and eighth issues.

## CONCLUSION

Because we conclude that (i) the evidence supporting the conviction is legally and factually sufficient, (ii) the trial court did not err in denying appellant's challenge for cause as to an objectionable juror, (iii) the trial court did not allow improperly injected evidence outside the record in closing argument, and (iv) the challenged statute is not unconstitutionally overbroad or vague, we affirm the judgment of conviction.

_____

Jan P. Patterson, Justice

Before Justices B. A. Smith, Patterson and Puryear

Affirmed

Filed:  January 20, 2006

Do Not Publish